# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

Assigned on briefs January 15, 2013

### JAMES ANTHONY BURGESS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Putnam County**

**No. 07-0676   David A. Patterson, Judge**

_____

**No. M2012-01308-CCA-R3-PC - Filed March 21, 2013**

_____

This is a post-conviction appeal of the trial court's order denying appellant relief from his jury convictions of felony murder (two counts); second degree murder (two counts); aggravated burglary; and reckless endangerment.  The trial court, which heard the post-conviction petition, sentenced appellant to two consecutive life sentences plus thirteen years.  We affirm the trial court's denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

PAUL G. SUMMERS, Sr.J., delivered the opinion of the court in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, Jr., J., joined.

Rebecca Brady, Cookeville, TN, for the petitioner-appellant, James Anthony Burgess.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn,  Assistant Attorney General; Anthony Craighead, Deputy District Attorney General; and Beth Willis, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.   FACTUAL BACKGROUND

On January 22, 2007, a Putnam County jury convicted appellant of two counts of second degree murder, two counts of felony murder, one count of especially aggravated burglary, and one count of reckless endangerment.  The jury sentenced appellant to life in prison for the two felony murder convictions. After a sentencing hearing, the trial court sentenced appellant to numerous years for each second degree murder conviction and ordered that they run consecutively.

In a direct appeal of appellant's case, this Court affirmed all convictions but modified the especially aggravated burglary conviction to aggravated burglary. On remand, the trial court modified that sentence to three years. After the appeal, appellant filed his post-conviction petition, the essence of which was ineffective assistance of counsel at trial and on appeal. The same lawyer represented appellant at both levels. As subparts of his ineffective assistance claim, appellant listed at least ten reasons why counsel was ineffective. The alleged ineffective claims were:

1. Failure to attack the validity of the search of appellant's vehicle;

2. Failure to argue that the photos of the deceased should have been suppressed due to tampering;

3. Failure to object to "false evidence" used at trial and misstatements of evidence made by the state in the appeal;

4. Failure to communicate appropriately with appellant during the preparation for the defense;

5. Failure to call Dr. Maltman, Luke Chaffin or Eric Engum as witnesses for the defense;

6. Failure to provide appellant access to discovery;

7. Failure to attack the validity of the indictment;

8. Failure to properly investigate the facts and theories of the case, including interviewing of the state's witnesses;

9. Failure to raise the issue of provocation or the defense that the appellant may have acted in self-defense and not bringing in evidence of the "missing handgun" and "possible bullet hole"; and

10. Preparation of the appellant's appeal even though counsel was aware that the appellant wanted a new attorney appointed for the appeal.

The unquestioned facts of the crimes challenge the appellant in his claim of poor representation. The simplest way for us to give a rendition of the insurmountable job his lawyer had to defending him is to state the factual background this Court rendered in the direct appeal, as follows:

Appellant and the victim, Elizabeth Burgess, began dating in 1998. At the time, the victim was already pregnant with her first child, M.C. Appellant took an active role in raising the child. On June 30, 2000, Appellant and the victim got married. On December 17, 2002, J.B., the son of the victim and Appellant, was born. Shortly after the birth of J.B., the marriage began to deteriorate.

By January 2007, the marriage was beyond repair. According to Appellant, the victim told him at that time that she was unhappy with him and unhappy in the marriage. Appellant began sleeping at the ambulance station where he worked as a paramedic. By March 2007, he was living at a friend's house. During this time period, appellant began dating a woman named Jackie Reid, and the victim began dating a man named Jimmy Prewitt, the other victim.

On February 22, 2007, the chancery court entered an order which ordered Appellant to have no contact with the victim. Appellant testified that he was not present when the court ruled on the order of protection. He admitted that he signed it at a later time. On March 26, 2007, the chancery court entered an ex parte order of protection in which Appellant was ordered to have no contact or communication with the victim. The order also set a hearing for April 5, 2007. On April 5, 2007, the court entered an order continuing the matter until a hearing on April 20, 2007, and extending the ex parte order of protection.

Appellant had visitation with J.B. on May 1 and May 3, 2007. On May 5, 2007, according to appellant, the victim sent him a text message that she needed child support money. On the evening of May 5, 2007, Appellant sent the victim several text messages to try to get her to talk to him about J.B. and whether Mr. Prewitt was spending the night at the house. The victim sent a reply that she was eating supper and refused to talk to Appellant at that time. She told him to send her a text message or leave a voice mail instead. Appellant found the victim, Mr. Prewitt, and the children, M.C. and J.B., at Cheddar's restaurant. Appellant approached them in the parking lot. Words were exchanged between Appellant, the victim

and Mr. Prewitt. The victim drove off with Mr. Prewitt and the children. Appellant was angry and sat in his car.

Shortly thereafter, Appellant began driving to the victim's home which he formerly shared with her. As he drove to the house, he called Ms. Reid and told her that he could not "take this anymore," and he was going to "kill her," meaning the victim. Ms. Reid testified that he might have said "kill them" instead of "kill her." When Appellant arrived at the house, the victim and Mr. Prewitt were outside on the front porch. The victim said that she did not want to talk to him and the victim and Mr. Prewitt went inside the house. Appellant walked to his car and pulled out a gun from his duffle bag. According to Appellant, he was attending a picnic later that day and intended to do some target practice with a friend. Appellant loaded two magazines with ammunition. He placed one magazine in the gun. Appellant walked to the front door. He could see M.C. and J.B. in M.C.'s room through the window which is right next to the front door. Appellant knocked on the door. When the victim and Mr. Prewitt did not open the door, Appellant fired into the front door six times. Using the gun, he broke a side window next to the door. Appellant reached through the broken window and unlocked the door. Appellant walked into the living room and shot the victim nine times.

Appellant followed Mr. Prewitt into M.C.'s room. The children were standing in front of the raised window. Appellant had told them long ago to crawl out of the window and get out of the house when the alarm was set off. Mr. Prewitt ran to the window with the children and pushed the children behind him. Appellant entered the room about where the children were standing and began shooting Mr. Prewitt. Mr. Prewitt climbed out of the window, and Appellant followed him. Mr. Prewitt was shot five times and one of the wounds was at his left temple. The shot to Mr. Prewitt's temple had been fired from two and a half to three feet away.

According to Appellant, after shooting the victim and Mr. Prewitt, his first thoughts were of the children. He went inside the house to make sure they were okay. He hugged and kissed them. He went to the living room and saw the victim's body. He knew that she

was dead. He held her hand and told her that he loved her. Appellant disconnected the house alarm and called 911. He told the operator that he had killed the victim because he hated her and she hated him. When the 911 operator asked if the victim was dead, Appellant replied that he hoped so.

Appellant sat on the front porch of the house and considered committing suicide. However, a friend called his cellphone and talked Appellant out of it. While Appellant sat on the front porch, local law enforcement surrounded the house and set up a perimeter with a SWAT team. Local law enforcement had been informed that appellant was armed by the 911 operator. After about three hours, the officers were able to approach Appellant and arrest him. The children were in the house until Appellant was arrested.

When the officers approached the house, they saw a dead man in the front yard. Upon entering the house, they say a body in the living room and a great deal of blood. The officers retrieved the children from the bedroom and stood in a line in front of the victim's body, so the children would not have to see their mother's body.

*State v. James Anthony Burgess*, No. M2009-00897-CCA-R3-CD, 2010 Tenn. Crim. App., Lexis 659, at * 1-3 (Tenn. Crim. App. Aug. 4, 2010), *perm. to app. Denied* (Tenn. Dec. 7, 2010).

The post-conviction trial court held a thorough hearing in Putnam County where the appellant was represented by new counsel, appointed by the court. His first motion was for his new lawyer to be removed and another lawyer appointed, which the court denied. Appellant testified for himself, and the state called his former lawyer, against whom the ineffective claim had been made, to address appellant's points.

## II. LAW AND ANALYSIS

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. *See* Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996).

When appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). Review of a trial court's application of law to the facts of the case is *de novo*, with no presumption of correctness. *Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001); *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both the trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App.1997) (noting that same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing, *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see Strickland,* 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.,* a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Courts need not approach the *Strickland* test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; *see also, Goad*, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

Appellant claims that counsel was ineffective for failing to move to suppress items found during a search of appellant's vehicle. This claim lacks any merit. First, the search of appellant's car was pursuant to a search warrant covering the victim's property, which included any vehicles at the property. Second, the only items that were taken from the vehicle were items that were within the plain sight of investigators and subject to seizure without a warrant. Finally, the post-conviction court accredited trial counsel's testimony that "what was found in the car neither helped nor hurt" the appellant's cause. Appellant fails to show what evidence would have been suppressed and how that would have changed the outcome of the trial.

Appellant fails in his argument that trial counsel was ineffective for failing to suppress photographs of the deceased at the crime scene. The testimony at the post-conviction hearing was that trial counsel did not believe the bodies had been tampered with before being photographed. Furthermore, the testimony established that whether the bodies had been moved did not matter to the defense strategy. The post-conviction court found that the photos were relevant to issues other than the location of the bodies and that any motion to suppress would not have been granted. Petitioner has failed to satisfy either prong of the *Strickland* test regarding the photographs of the bodies.

In regards to the claims that his trial counsel should have objected to "false evidence," appellant has failed to show what "evidence" was allegedly false. While appellant has previously called into question the status of the order of protection, this Court extensively reviewed these issues on direct appeal and found in the state's favor.

Appellant also claims that trial counsel was ineffective for failing to communicate with him during the filing of the direct appeal. However, appellant has never specified how the outcome would have been different had appellant been consulted. Likewise, this issue lacks merit.

Any claims of appellant for ineffective assistance of counsel due to trial counsel's failing to call Dr. Mark Maltman, Luke Chaffin or Eric Engum as witnesses also fail. Appellant failed to call these witnesses at the post-conviction hearing. Therefore, we

could only speculate as to how these witnesses would have testified. Furthermore, the testimony of trial counsel was that a tactical decision was made not to call these witnesses because their testimony would not have been favorable to appellant's cause.

Appellant's argument regarding trial counsel's alleged failure to provide appellant with discovery is unsupported. First, appellant fails to identify what parts of discovery he was not provided. Second, there is no proof of how his having received any alleged missing discovery would have prejudiced him at trial. Any claims of deficiency for failing to challenge the indictment also fail. The post-conviction court found that appellant failed to present any competent proof that there was any insufficiency in the indictment, and upon its own review found the indictment sufficient.

The issue of trial counsel's failure to properly investigate the facts or interview the state's witnesses also lacks any merit. Appellant fails to supply any proof that counsel failed to investigate the facts of his case, or how the alleged lack of investigation prejudiced his trial. Likewise, appellant has not identified which witnesses counsel should have interviewed, what the witnesses would have told his counsel or how the information that the witnesses provided counsel could have affected the outcome of the trial.

Appellant's argument that trial counsel was deficient for failing to raise the issue of self-defense is meritless. Counsel's testimony at the post-conviction hearing was clear that he felt that bringing up the issue of self-defense would eviscerate the argument that appellant was acting in the heat of passion rather than by premeditation. Trial counsel was attempting to have the jury focus on the fact that appellant was going through a divorce, taking psychotropic medication, and had just gotten into a heated encounter with both victims prior to the killings. It was noted by the post-conviction court that the evidence at trial was that appellant shot through the front door of the victim's house prior to forcing entry into the home; shot his estranged wife; and then chased the second victim out a window prior to shooting him in the head from a distance of three feet. The attempt to claim self defense would have been a poor tactic, and trial counsel prudently avoided this defense.

Finally, appellant claims ineffectiveness for counsel's filing the direct appeal when appellant claims counsel knew that appellant wanted a new attorney. The post-conviction court discredited appellant's testimony that after trial he told his trial attorney that he wanted new counsel for the appeal. The testimony from trial counsel was that he was never made aware that appellant was seeking a new attorney. In addition, appellant has

not shown that trial counsel was deficient in the direct appeal, or how any alleged deficiency resulted in prejudice during the direct appeal.

Finding no merit to any of appellant's ineffective assistance of counsel claims, either as to deficient performance or prejudice, we find appellant's petition for post-conviction relief to be meritless.

## III.  CONCLUSION

In consideration of the foregoing and the record as a whole, the post-conviction court is affirmed.

_____
PAUL G. SUMMERS, Senior Judge